UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KAVEH AFRASIABI, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 21-cv-10562-ADB |
| | * | |
| UNITED PRESS INTERNATIONAL and | * | |
| STRUAN STEVENSON, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## MEMORANDUM AND ORDER ON
## UPI'S MOTION FOR JUDGMENT ON THE PLEADINGS

BURROUGHS, D.J.

Plaintiff Dr. Kaveh Afrasiabi alleges that Defendants United Press International ("UPI")

and Struan Stevenson (together with UPI, "Defendants") defamed him in a February 2021

article.  [ECF No. 1 ("Compl.")].  Currently before the Court is UPI's motion for judgment on

the pleadings.  [ECF No. 8].  For the reasons set forth below, UPI's motion is GRANTED.

I.    BACKGROUND

A.    Factual Background

> A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion
> to dismiss.  Because [a Rule 12(c)] motion calls for an assessment of the merits of
> the case at an embryonic stage, the court must view the facts contained in the
> pleadings in the light most favorable to the nonmovant and draw all reasonable
> inferences therefrom . . . .

Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (alteration in original)

(citations and internal quotation marks omitted).  Additionally, "[i]n reviewing a motion under

Rule 12(c) . . . [the Court] may consider 'documents the authenticity of which are not disputed

by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to

in the complaint.'" Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (third alteration in original) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  The Court provides the following background consistent with this standard.

Dr. Afrasiabi is a political scientist with expertise in Iran and U.S.-Iran relations. [Compl. ¶ 6].  Among his academic pursuits, he obtained a PhD in political science.  [Id. ¶ 7]. He has also authored several books on a variety of topics—including, but not limited to, Iran— and articles in dozens of prominent journals and newspapers.  [Id. ¶¶ 8–9].  In addition to writing, Dr. Afrasiabi taught political science at various universities, served as a consultant to the United Nations, appeared on television as an expert on the Middle East, and is the founder and director of a non-governmental organization dedicated to advocating for and facilitating interfaith dialogue and peacekeeping.  [Id. ¶¶ 10–12].  Given his accomplishments, he "has enjoyed a stellar reputation in the community of academics, political scientists and leaders in the field of international relations . . . ."  [Id. ¶ 13].

On January 15, 2021, the United States Attorney's Office for the Eastern District of New York charged Dr. Afrasiabi with violating (and conspiring to violate) the Foreign Agent Registration Act ("FARA"), 22 U.S.C. § 611 *et seq.*[1]  [Compl. ¶ 14].  He was arrested in Boston and had his initial appearance, pursuant to Federal Rule of Criminal Procedure 5(c)(3), before a Magistrate Judge in this District on January 19, 2021.  [Id.].  On February 10, 2021, after the

---

[1] Broadly speaking, the FARA requires agents of foreign principals to file registration statements with the federal government containing information concerning, among other things, who they represent, their intended activities, and their sources of funding.  See 22 U.S.C. § 612.

case had been transferred to the Eastern District of New York, Dr. Afrasiabi pleaded not guilty.[2]

[Id. ¶ 15].

      After Dr. Afrasiabi's arrest, but before his plea, UPI published an article, written by

Mr. Stevenson, about Dr. Afrasiabi's arrest and pending criminal charges (the "Article").

[Compl. ¶ 18].  The Article's headline read: "Iranian spy arrested by FBI was wolf in sheep's

clothing."  [Id.]; see [ECF No. 10-1 at 2–4 (Article)].  In the Article, Mr. Stevenson wrote the

following about Dr. Afrasiabi:

> When the FBI arrested Kaveh Lotfolah Afrasiabi, a prominent political scientist
> and self-styled expert on Iran, it should have sent shockwaves through Western
> media circles.
>
> [Dr.] Afrasiabi had spent the past 13 years proclaiming the virtues of the Islamic
> Republic to U.S. lawmakers and media outlets.  He was a skilled and trusted
> lobbyist, at least until the FBI uncovered the fact that he had been paid more than
> $265,000 through Iran's Permanent Mission to the United Nations in New York, in
> flagrant breach of the [FARA].  A press release from the U.S. Justice Department
> set out the charges now faced by [Dr.] Afrasiabi for "conspiring to act as an
> unregistered agent of the government of the Islamic Republic of Iran."
>
> John C. Demers, assistant attorney general for national security, said: "For over a
> decade, [Dr.] Afrasiabi pitched himself to Congress, journalists and the American
> public as a neutral and objective expert on Iran.  However, all the while, [Dr.]
> Afrasiabi was actually a secret employee of the government of Iran and the
> permanent mission of the Islamic Republic of Iran to the United Nations, who was
> being paid to spread their propaganda.  In doing so, he intentionally avoided
> registering with the Department of Justice as the [FARA] required.  He likewise
> evaded his obligation to disclose who was sponsoring his views.  We now begin to
> hold him responsible for those deeds."
>
> The revelation that an Iranian spy was embedded in the heart of the U.S. democratic
> process certainly came as no surprise to representatives of the National Council of
> Resistance of Iran and the Mojahedin e-Khalq (PMOI/MEK), the main opposition
> movement to the theocratic fascist regime in Iran.  The NCRI and MEK have long
> been the target of a campaign of misinformation and demonization by Tehran.

---

[2] Dr. Afrasiabi's criminal case is currently pending in the United States District Court for the
Eastern District of New York.  See United States v. Afrasiabi, 21-cr-00046 (E.D.N.Y. 2021).

Frequent egregious newspaper articles and TV and radio documentaries have appeared over the years, trumpeting slurs and fabrications that have clearly been sourced directly from Tehran.  Generally, an Iranian "expert" like [Dr.] Afrasiabi can be found, who has briefed the journalists concerned.  There has even been evidence of Western journalists, newspapers and politicians being directly paid by the Iranian regime.

        . . . .

Attacks on the NCRI and MEK in the United States and EU media usually contain blatantly false allegations that can be traced back directly to the Iranian Ministry of Intelligence and Security.  Quite frequently, such attacks can be found to have been conveyed through a familiar handful of pro-Iran lobbyists and supposed academics whose work is all but indistinguishable from [Dr.] Afrasiabi, who faces up to 10 years jail in America.

Sadly, years of appeasement of the tyrannical Iranian regime have emboldened its efforts to deceive the West, while indulging in grave violations of human rights at home and aggressive military expansionism and the export of terrorism abroad. The arrest of [Dr.] Afrasiabi and the trial of Assadi should surely be a wake-up call for the West.

[ECF No. 10-1 at 2–4].[3]

Notwithstanding the Article's characterization of him, Dr. Afrasiabi maintains that he is not a "spy" or "a wolf in sheep's clothing" and has never engaged in any espionage against the United States.  [Compl. ¶¶ 24–25 ].  He further avers that the Article tarnished his reputation and has caused him emotional distress.  [Id. ¶ 32].

## B.    Procedural Background

On April 2, 2021, Dr. Afrasiabi filed his one-count complaint alleging defamation. [Compl.].  Specifically, Dr. Afrasiabi contends that the Article's headline—"Iranian spy arrested by FBI was wolf in sheep's clothing"—was defamatory.  [Id. ¶¶ 18, 25].  UPI answered, [ECF

---

[3] The Article also describes Iran's "history of deception and disinformation," [ECF No. 10-1 at 2–3], the "execution, imprisonment and torture of MEK members," [id. at 3], and Belgium's prosecution of Assadollah Assadi, an Iranian diplomat, for terrorism, [id.].

No. 4], and then moved for judgment on the pleadings, [ECF No. 8].[4]  Dr. Afrasiabi opposed

UPI's motion, [ECF No. 11], and UPI filed a reply, [ECF No. 14].

## II.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Courts considering motions for judgment

on the pleadings use a standard similar to the one used for motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6), except that a "Rule 12(c) motion, unlike a Rule 12(b)(6) motion,

implicates the pleadings as a whole."  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st

Cir. 2006).  "Judgment on the pleadings is proper 'only if the uncontested and properly

considered facts conclusively establish the movant's entitlement to a favorable judgment.'"

Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres, 445 F.3d at

54).

## III.    DISCUSSION

Dr. Afrasiabi objects to the Article's headline: "Iranian spy arrested by FBI was wolf in

sheep's clothing."  See [Compl. ¶¶ 18, 25].  UPI responds that the headline is a non-actionable

opinion which, as a matter of law, cannot support a defamation claim.[5]  See [ECF No. 9 at

16–17].

> The Supreme Court has recognized constitutional limits on the *type* of speech which
> may be the subject of state defamation actions.  Because defamation requires a false
> statement at its core, opinions typically do not give rise to liability since they are
> not susceptible of being proved true or false.  As Massachusetts case law observes,
> [i]n the defamation context, an expression of pure opinion is not actionable.  Thus,
> a statement cannot be defamatory if it is plain that the speaker is expressing a

---

[4] To date, Mr. Stevenson has not appeared.  Despite filing proof of service as to UPI, [ECF No. 7], Dr. Afrasiabi has filed no proof of service as to Mr. Stevenson.

[5] UPI makes a series of other arguments, but the Court need not reach them.

subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.

Merely couching a statement as an opinion, however, will not automatically shield the speaker from liability where the statement implies the existence of underlying defamatory facts.   Nonetheless, defamation cannot arise where the speaker communicates the non-defamatory facts that undergird his opinion.   Thus, the speaker can immunize his statement from defamation liability by fully disclosing the non-defamatory facts on which his opinion is based.

Put together, the relevant question is not whether challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact.   Whether a statement is a verifiable fact or an opinion can be decided by the court as a matter of law.   This task requires an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the conversation and any cautionary terms used by the person publishing the statement.

Piccone v. Bartels, 785 F.3d 766, 771–72 (1st Cir. 2015) (alteration in original) (citations and internal quotation marks omitted).[6]  With this framework in mind, the Court finds that the uncontested and properly considered facts conclusively establish that the allegedly defamatory statement at issue here constitutes a non-actionable opinion.

The Court begins with the Article's context.  See Cole v. Westinghouse Broad. Co., 435 N.E.2d 1021, 1025 (Mass. 1982) (noting that a court must "consider all the words used, not merely a particular phrase or sentence"); Reilly v. Associated Press, 797 N.E.2d 1204, 1210 (Mass. App. Ct. 2003) (in deciding whether a statement was fact or opinion, a court must "examine the statement in its totality in the context in which it was . . . published." (quoting Lyons v. Globe Newspaper Co., 612 N.E.2d 1158, 1162 (Mass. 1993))).  Here, context makes

---

[6] Although neither party explicitly addresses choice of law, they seem to agree that Massachusetts law governs Dr. Afrasiabi's defamation claim, and the Court will therefore apply it.  See Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) ("Where, however, the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement."). Still, "[s]uperimposed on any state's defamation law are First Amendment safeguards."  McKee v. Cosby, 874 F.3d 54, 60 (1st Cir. 2017).

clear that the headline is opinion, not fact.  It is undisputed that the Article was posted in the section of UPI's site dedicated to opinion pieces.  See [ECF No. 10 ¶¶ 5, 10 (affidavit); ECF No. 11 (Dr. Afrasiabi's brief, which fails to contest that assertion)].  That fact alone suggests that anyone reading the Article was (or reasonably should have been) doing so with an understanding that the Article, as a whole, was subjective.

Further, even if a reader disregarded the fact that the Article appeared in the opinion section of UPI's site, the Article's language makes clear that the piece's author, Mr. Stevenson, was "expressing a subjective view," "interpretation," "theory," "conjecture," or "surmise." Piccone, 785 F.3d at 771 (quoting Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000)).  For instance, rather than simply reporting on how people actually responded to particular events (such as Dr. Afrasiabi's arrest), Mr. Stevenson wrote about how individuals *should be* responding.  See [ECF No. 10-1 at 2 ("When the FBI arrested [Dr.] Afrasiabi, a prominent political scientist and self-styled expert on Iran, it should have sent shockwaves through Western media circles."); id. at 4 ("The arrest of [Dr.] Afrasiabi and the trial of Assadi should surely be a wake-up call for the West.")].  Additionally, the Article plainly reflects that Mr. Stevenson was pushing a specific agenda based on views he personally harbored.  See [id. at 2 (calling Ayatollah Khomeini a "primeval, bearded psychopath" and characterizing Khomeini's position that he is God's representative a "great lie")].  To boot, the short blurb about Mr. Stevenson at the end of the Article notes that he is "the coordinator of the Campaign for Iran Change," [id. at 4], which confirms that he was writing with a subjective voice and advocating for a particular position.

Even if one sets aside the fact that the Article is, as a whole, an opinion piece, the fact that the allegedly defamatory statement is contained in the headline reinforces the notion that it is

non-actionable.  Media outlets, like UPI, are afforded additional latitude when publishing

headlines because a "reasonable reader would not expect [a headline] to include nuanced

phrasing."  Scholz v. Delp, 41 N.E.3d 38, 47 (Mass. 2015); see also Test Masters Educ. Servs.,

Inc. v. NYP Holdings, Inc., 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) ("A newspaper need not

choose the most delicate word available in constructing its headline; it is permitted some drama

in grabbing its reader's attention, so long as the headline remains a fair index of what is

accurately reported below.").  Additionally, the headline itself makes clear that it is opinion, not

an assertion of fact.  Although the term "spy" is arguably capable of being proved false,[7] the

phrase "wolf in sheep's clothing" plainly is not.[8]  Given that the term "Iranian spy" is followed

---

[7] As discussed infra, Dr. Afrasiabi takes the position that the label "spy" is tantamount to a
factual assertion that the "spy" violated (or has been charged with violating) the federal
espionage statute.  See [Compl. ¶¶ 20–24, 29; ECF No. 11 at 2].  The Court disagrees.  The word
"spy" has multiple definitions.  See Spy, Merriam-Webster, https://www.merriam-
webster.com/dictionary/spy (last visited Sept. 22, 2021) ("one who keeps secret watch on a
person or thing to obtain information" or "a person employed by one nation to secretly convey
classified information of strategic importance to another nation"); Spy, Oxford English
Dictionary, https://www.oed.com/view/Entry/188063?rskey=PA7BzS&result=1#eid (last visited
Sept. 22, 2021) ("[o]ne who spies upon or watches a person or persons secretly; a secret agent
whose business it is to keep a person, place, etc., under close observation; esp. one employed by
a government in order to obtain information relating to the military or naval affairs of other
countries, or to collect intelligence of any kind."); Spy, Dictionary.com,
https://www.dictionary.com/browse/spy (last visited Sept. 22, 2021) ("a person employed by a
government to obtain secret information or intelligence about another, usually hostile, country,
especially with reference to military or naval affairs" or "a person who keeps close and secret
watch on the actions and words of another or others").  Given the charges brought against
Dr. Afrasiabi and the government's description of his conduct, which are accurately described in
the Article, one could reasonably conclude that, if proven true, those allegations would justify
labeling him a "spy."  After all, he is accused of secretly spreading propaganda on Iran's behalf.
Such activity could aptly be described as sowing disinformation, essentially a subcategory of
espionage.  Still, the Court need not definitively resolve the issue of whether calling someone a
"spy" alone can be defamatory because context leaves no doubt that the headline here was a
non-actionable opinion.

[8] The phrase "a wolf in sheep's clothing" is an idiom, incapable of being proved false (or true).
Just as Dr. Afrasiabi could not prove that (1) a bird in hand is not actually worth two in the bush,

by "a wolf in sheep's clothing," the entire headline, read together as it must be, see Cole, 435

N.E.2d at 1025, is clearly a statement of opinion.[9]

Finally, the Article provides the factual bases for Mr. Stevenson's opinion that

Dr. Afrasiabi is an "Iranian spy" and a "wolf in sheep's clothing," which immunizes Defendants

from liability.  See Piccone, 785 F.3d at 771 ("Thus, the speaker can immunize his statement

from defamation liability by fully disclosing the non-defamatory facts on which his opinion is

based." (citing Howell v. Enter. Publ'g Co., 920 N.E.2d 1, 27–28 (Mass. 2010))).  Specifically,

the Article includes the following facts, the truth of which Dr. Afrasiabi does not contest:

> [Dr.] Afrasiabi had spent the past 13 years proclaiming the virtues of the Islamic Republic to U.S. lawmakers and media outlets.  He was a skilled and trusted lobbyist, at least until the FBI uncovered the fact that he had been paid more than $265,000 through Iran's Permanent Mission to the United Nations in New York, in flagrant breach of the [FARA].  A press release from the U.S. Justice Department set out the charges now faced by [Dr.] Afrasiabi for "conspiring to act as an unregistered agent of the government of the Islamic Republic of Iran."
>
> John C. Demers, assistant attorney general for national security, said: "For over a decade, [Dr.] Afrasiabi pitched himself to Congress, journalists and the American public as a neutral and objective expert on Iran.  However, all the while, [Dr.] Afrasiabi was actually a secret employee of the government of Iran and the permanent mission of the Islamic Republic of Iran to the United Nations, who was being paid to spread their propaganda.  In doing so, he intentionally avoided registering with the Department of Justice as the Foreign Agents Registration Act required.  He likewise evaded his obligation to disclose who was sponsoring his views.  We now begin to hold him responsible for those deeds."

[ECF No. 10-1 at 2].  Because Mr. Stevenson accurately presented the facts surrounding

Dr. Afrasiabi's background, arrest, and criminal charges in the Article, neither he nor UPI can be

---

(2) a rose by another name would not smell as sweet, or (3) every cloud does not have a silver lining, he cannot prove that he is not a wolf in sheep's clothing.

[9] In essence, Dr. Afrasiabi's position seems to be that the substitution of "spy" for "undisclosed foreign agent" in the headline constitutes defamation, but that position is untenable when context is properly accounted for.

held liable for defamation based on his opinion that those facts render Dr. Afrasiabi an "Iranian spy" and a "wolf in sheep's clothing."  See Piccone, 785 F.3d at 772–73 (finding defamation claim properly defeated where speaker disclosed facts underlying his opinion that the plaintiff was "unprofessional").  Put slightly differently, because the Article permits the reader to form his or her own opinion about whether the facts presented make Dr. Afrasiabi a "spy" and/or "a wolf in sheep's clothing," the statement is not actionable.  See McKee v. Cosby, 874 F.3d 54, 61 (1st Cir. 2017) ("[W]hen the speaker 'outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.'" (quoting Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002))); Piccone, 785 F.3d at 773 ("Thus, the full context of the conversation makes clear that Defendant fully disclosed the non-defamatory facts about the confrontation in a way that allowed [DHS agent] to form his own impression. Accordingly, the district court correctly concluded that Defendant's statements regarding his impression of Plaintiffs' professionalism were not actionable under defamation law.").

Importantly, whether or not the facts cited actually support the opinion is immaterial, as long as the facts are neither false nor defamatory.  See McKee, 874 F.3d at 63 ("Whether we deem these underlying facts to be probative is immaterial, so long as the facts presented for the readers' consideration are not both false and defamatory." (citing Yohe v. Nugent, 321 F.3d 35, 42 (1st Cir. 2003))).  Here, the only aspect of the Article that Dr. Afrasiabi has challenged is the headline, and he has not asserted that any of the facts about his background, arrest, or criminal charges in the Article are inaccurate or defamatory (nor could he plausibly do so).

In an effort to avoid dismissal, Dr. Afrasiabi makes a series of unavailing arguments. First, he asserts that by labeling him a "spy," Mr. Stevenson made a false factual assertion that

Dr. Afrasiabi was being charged with the crime of espionage.  See [Compl. ¶¶ 20–25; ECF No. 11 at 2].  That argument fails, however, because the Article makes clear that Dr. Afrasiabi was being charged with "conspiring to act as an unregistered agent of the government of the Islamic Republic of Iran," and that the factual bases for the charges were "intentionally avoid[ing] registering with the Department of Justice" and "evad[ing] his obligation to disclose who was sponsoring his views."  [ECF No. 10-1 at 2].  Accordingly, no reasonable reader could think that labeling Dr. Afrasiabi a "spy" in the Article's headline was a factual assertion that he had been charged with espionage.

Second, he maintains that by subsequently amending the headline to remove the word "spy" (and by lobbying Google to take down versions with the original headline), UPI essentially admitted that the original headline was defamatory.  [ECF No. 11 at 2–3].  Even if the post-publication emails between UPI and Dr. Afrasiabi, [ECF Nos. 11-1, 11-2], were properly before the Court (and they are not),[10] they would not change the Court's conclusion.  Parties routinely take measures designed to avoid litigation that are not admissions of liability or misconduct.  What UPI did in an effort to appease Dr. Afrasiabi does not alter the Court's finding that the Article's headline was a non-actionable opinion.

Thus, the uncontested and properly considered facts conclusively establish that UPI is entitled to a favorable judgment.  Zipperer, 493 F.3d at 53.

---

[10] Federal Rule of Evidence 408 bars the admission of evidence of both "furnishing, promising, or offering . . . a valuable consideration in compromising or attempting to compromise [a] claim" and "conduct or a statement made during compromise negotiations about [a] claim" when such evidence is offered to "prove or disprove the validity . . . of [the] disputed claim."  Fed. R. Evid. 408(a)(2).  Here, Dr. Afrasiabi is attempting to use UPI's compromise offers to prove its liability, which is proscribed by Rule 408.  Further, Dr. Afrasiabi has not even attempted to explain why the emails fit into the small category of documents that the Court can properly consider when ruling on a motion for judgment on the pleadings.  See Curran, 509 F.3d at 44.

**IV.    CONCLUSION**

For the reasons set forth above, UPI's motion for judgment on the pleadings, [ECF No. 8], is <u>GRANTED</u>, and Dr. Afrasiabi's complaint, [Compl.], will be <u>DISMISSED</u> in its entirety.[11]

**SO ORDERED.**

September 22, 2021                                      /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE

---

[11] Although Mr. Stevenson has not yet appeared, because the Court finds that the Article contains no actionable statements, Dr. Afrasiabi has failed to state a claim against Mr. Stevenson just as he has failed to state a claim against UPI.  Accordingly, the case will be dismissed in its entirety.